UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                               :

RENE CARABALLO & CARMEN TORRES,   :

                    Plaintiffs,                    :            12 Civ. 3127 (JPO)

           -v-                              :            OPINION AND ORDER

HOMECOMINGS FINANCIAL, *et al*,        :

                   Defendants.          :
-------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

        This is a predatory lending case involving a home in the Bronx, New York (the "Property") that Plaintiffs Rene Caraballo and Carmen Torres purchased with financing from Defendants, a collection of financial services entities.[1] Plaintiffs have moved for partial summary judgment declaring that the mortgage filed against the Property is void and unenforceable.[2] For the reasons that follow, that motion is denied.

---

[1] The named defendants in this case are: Homecomings Financial LLC ("Homecomings"), Federal National Mortgage Association ("Fannie Mae"), Mortgage Electronic Registration Systems, Inc. ("MERS"), Nationstar Mortgage ("Nationstar"), and ten John Does. Neither Homecomings nor any John Does have ever appeared in this action. The remaining defendants, Fannie Mae, MERS, and Nationstar, are jointly represented. Reference to "Defendants" in this opinion will be to these represented defendants only.

[2] In portions of the complaint not relevant to this motion for partial summary judgment, Plaintiffs assert that the loan was an unfair, abusive, and illegal transaction, voidable under New York laws and triggering damages under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 et seq.

I.     Background

    A.     Origination of the Note and Mortgage

Plaintiffs acquired the Property on May 14, 2007 for a purchase price of $397,500. To finance this purchase, Plaintiffs obtained a $397,500 purchase price loan from Defendant Homecomings Financial LLC ("Homecomings") and executed a Note for this amount ("the Note"). The Note was secured by a Mortgage which identified Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") as the mortgagee of record "solely as nominee for [Homecomings] and [its] successors and assigns."[3] The Note granted Homecomings a right to be paid under the terms of the Note while the Mortgage purportedly granted MERS a security interest in the Property.[4]

    B.     MERS

This case follows a flurry of litigation questioning the legal status of mortgages held by MERS. In 1993, as mortgage securitization became widespread, mortgage-industry participants created MERS to facilitate quick, low-cost transfers of mortgage interests. *MERSCORP, Inc. v.*

---

[3] There is no evidence suggesting that Homecomings actually directed any of the actions that MERS, its purported nominee, undertook with respect to the mortgage.

[4] The language on Plaintiffs' Mortgage states:
> MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. . . . FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.

(Dkt. No. 39, Exh. E.) This language presents a tautology. It is true that the entity that is recorded as the mortgagee becomes the mortgagee of record; such is the function of the recording system. However, by recording the mortgage in its name, MERS purports to become the mortgagee of record for *all* legal purposes. Reading the mortgage to suggest that MERS could be the mortgagee of record, but *only* for purposes of recording the mortgage, would render recording a sham—meaningful at only the instant of recording and no further. In truth, under the current legal regime, recording a mortgage may not even be meaningful at the instant of recording: the act of recording creates a placeholder in determining priority of security interests in a property, but title to that interest has nothing to do with the mortgagee of record and everything to do with ownership of the underlying note.

2

*Romaine*, 8 N.Y.3d 90, 96 (2006).  Under the public recording system, each transfer of a note triggered fees and the potential for "delays . . . by local recording offices, which were [subject to] . . . complex local regulations and database systems that had become voluminous and increasingly difficult to search."  *Bank of New York v. Silverberg*, 926 N.Y.S.2d 532, 535 (N.Y. App. Div. 2d Dep't 2011).  MERS allowed member companies to avoid these fees and delays by "appoint[ing] MERS to act as their common agent on all mortgages they register in the MERS system."  *Id.* (citing *Romaine*, 8 N.Y.3d at 96).  With MERS as the mortgagee of record, MERS members could exchange property interests without the need to publicly record the transfers.  In short, "MERS is a private, contractual superstructure that is grafted onto the public land-record[ing] system."  Adam J. Levitin, *The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title*, 63 Duke L.J. 637, 677 (2013).

"By May of 2007, . . . sixty million loans . . . [representing] more than half of the nation's existing residential loans [were] recorded under MERS's name."  Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L. Rev. 1359, 1373-74 (2010).  MERS's workforce of around fifty employees "perform [only] corporate and technology support functions."  Levitin, 63 Duke L.J. at 679.  This workforce "does not lend money, . . . receive payments on promissory notes, . . . [or] service loans by collecting loan payments."  *Silverberg*, 926 N.Y.S.2d at 536.  Rather, MERS is an umbrella organization that holds mortgages in name only as a purported nominee of its members.  The servicing and foreclosure of MERS-registered mortgages is performed by a force of over 20,000 "employees of mortgage servicers, originators, debt collectors, and foreclosure law firms" who are nominally designated MERS employees, although they receive no income or benefits from MERS.  Christopher L. Peterson, *Two Faces: Demystifying the Mortgage*

*Electronic Registration System's Land Title Theory*, 53 Wm. & Mary L. Rev. 111, 120-21 (2011).

"MERS's members are nominally required to report transfers of mortgage servicing rights to MERS, but MERS does not actually compel reporting." Levitin, 63 Duke L.J. at 678. One study found that MERS's records failed to correctly identify beneficial ownership of 58 percent of its mortgages. *Id.* at 679 n.168. "This leaves borrowers and the local county or municipal recording offices unaware of the identity of the true owner of the note . . . ." *Silverberg*, 926 N.Y.S.2d at 536.

When the collapse of the mortgage market triggered a nationwide flood of foreclosure actions, many questions were raised about the legal rights that are conferred by MERS-recorded mortgages. This case asks one such question: specifically, whether any entity holds a valid security interest in a property after the MERS-assigned mortgage securing that property is purportedly separated from the underlying note.

**II.     Legal Standard for Summary Judgment**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden on a party moving for summary judgment is to provide evidence of each element of his claim or defense illustrating his entitlement to relief. *Vt. Teddy Bear Co. v.*

*1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  If the movant makes this showing, the burden shifts to the non-moving party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence.  Fed. R. Civ. P. 56(f); *Anderson*, 447 U.S. at 250-51.  The court should view all evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in its favor," and a motion for summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party."  *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted).  At the same time, the non-moving party cannot rely upon mere "conclusory statements, conjecture, or speculation" to meet its burden.  *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) (citing *Matsushita*, 475 U.S. at 587).

**III.    Discussion**

Plaintiffs seek a declaration that: (1) "none of the Defendants, or any other third party, has any right or standing to maintain any action to foreclose or exercise any rights under the Mortgage"; and (2) "the Mortgage filed against the Property is void and is therefore unenforceable against Plaintiffs or the Property."  (Dkt. No. 22, "Am. Compl." at 8-9).  To win declaratory relief on summary judgment, Plaintiffs must demonstrate that, as a matter of law, the MERS-registered mortgage is invalid *and* that no other security interests in the Property flow from Plaintiffs' loan and Note obligations.

It bears noting at the outset that Plaintiffs rely on many cases in which the validity of MERS-registered mortgages was challenged from a significantly different procedural posture.  Nearly all of Plaintiffs' cases focus on standing.  New York courts have held that a foreclosing party lacks standing if it was assigned only a MERS-registered mortgage but not the underlying note at the commencement of the suit.  *See, e.g.*, Silverberg, 926 N.Y.S.2d at 533 ("The issue

5

presented on this appeal is *whether a party has standing* to commence a foreclosure action . . . . We answer this question in the negative.") (emphasis added).  *But see Mortgage Elec. Registration Sys., Inc. v. Coakley*, 838 N.Y.S.2d 622, 623 (N.Y. App. Div. 2d Dep't 2007) (standing requirements are met if MERS, or any other entity, held both the mortgage and the note at commencement of the suit).  But here, no foreclosure action has been filed.  The question before this Court is not whether a particular entity had standing to foreclose on the Property at the commencement of this suit, but rather to determine, based on the undisputed facts currently before the Court, whether any entity will ever have standing to foreclose on the Property at any point in the future.

First, the Court considers the validity of the MERS-registered Mortgage and its purported assignment.  The Mortgage was purportedly assigned by MERS to Nationstar Mortgage ("Nationstar") on July 19, 2013—fifteen months after this case was filed on April 20, 2012.  Nationstar is a servicer and Attorney-in-Fact for Fannie Mae, the purported owner of the Note, according to Defendants.  This assignment was recorded with the Register of the City of New York on August 13, 2013.

Plaintiffs contest the validity of this assignment on legal grounds.  Under New York Law, mortgages are incidental to the notes they secure.  *Merritt v. Bartholick*, 36 N.Y. 44, 45 (1867).  "A transfer of the mortgage without the debt is a nullity, and no interest is assigned by it."  *Id.*  Therefore, because MERS never held the Plaintiffs' Note—and therefore never possessed a valid mortgage to the Property—MERS's assignment of the Mortgage to Nationstar did not transfer either a valid mortgage or the right to foreclose on the Property.  *Cf. Silverberg*, 926 N.Y.S.2d at

536-37.[5] The provenance of the MERS-registered mortgage is a red herring: split mortgages may invalidate the standing of the purported mortgagee but they do not invalidate the existence of a lien on validly secured property.

Next, the Court turns to the rights that are attached to ownership of the Note. When a note is transferred, "the mortgage passes as an incident to the note." *Silverberg*, 926 N.Y.S.2d at 537. In MERS cases, a new mortgage, which travels with the note, must be created by operation of law; this legal fiction ensures that the holder of the note also holds the right to foreclose on the mortgage, even if the physical deed of mortgage records a spurious ownership interest held by a party that does not hold the note. Under this system, the entity that legally owns the Plaintiffs' Note also holds the right to foreclose on the Property based on the Mortgage.

In a legal regime where mortgage-related rights follow the note-holder by operation of law, problems can arise when note-owners, who are not subject to recording statutes, cannot be clearly identified.[6] If ownership of a note is unclear, it becomes difficult to determine who, or what entities, have valid security interests in the mortgaged property.

---

[5] In *Silverberg*, the court held that because MERS never possessed the note, it never possessed the right to foreclose on the mortgage, even though it was registered in MERS's name. And because MERS could assign only the rights that it actually possessed, the assignee also lacked the right to foreclose. *Silverberg*, 926 N.Y.S.2d at 536-37. The operative principle was that "the foreclosure of a mortgage cannot be pursued by one who has no demonstrated right to the debt." *Id.* at 537.

[6] Notes, having their origin in commercial paper, may be assigned in blank and are designed to facilitate free exchange of value. *Horvath v. Bank of New York, N.A.*, 641 F.3d 617, 624 (4th Cir. 2011) ("One of the defining features of notes is their transferability . . . ."); *Chauncey v. Arnold*, 24 N.Y. 330, 332 (1862) ("Commercial paper, under the custom of merchants and the statute of Queen Anne, has always been considered as forming an exception to many of the rules of the common law; and there is no feature in which there is a wider departure than the one relating to the issuing of paper in blank."). In contrast, mortgages, which create property interests, have historically triggered heightened reporting standards and could not be assigned in blank because that would obscure title. *Chauncey*, 24 N.Y. at 332 (noting that mortgages, in direct contrast to commercial paper, may not be transferred in blank). As the two instruments are

7

Plaintiffs' Note was originated by Homecomings, a company which entered bankruptcy on May 14, 2012 (almost a month after the original Complaint in this case was filed on April 20, 2012) and became defunct on December 17, 2013.[7]  Homecomings has never appeared in this action.  The remaining Defendants assert that Homecomings made a valid assignment of the Note to Fannie Mae before filing for bankruptcy.  However, Defendants have offered no evidence that such an assignment took place.[8]  Under these circumstances, the Court has no basis for finding that a valid assignment of the Note occurred.

Defendants further contend that Fannie Mae transferred physical possession of the Note to its servicer, Nationstar, and that Nationstar therefore holds mortgage-like rights.  However, physical possession of the Note is sufficient to transfer mortgage rights under only limited circumstances: where there is an allonge or indorsement in blank on the face of the Note, the

---

integrally connected, their disparate legal treatment has created knotty theoretical problems. These problems have multiplied as increasingly complex financial innovations have blurred the lines between securities and property rights.  Although *Chauncey* has not been overruled, the current practice of MERS registration, combined with the rule that mortgages follow notes, has created a system where title, in the form of security interests, can be transferred in blank without being publicly recorded.  The rules of commercial paper, once considered "an exception to many of the rules of the common law," now govern our system of commerce and extend into the realm of property.  *Chauncey*, 24 N.Y. at 332; *see also* Peterson, 53 Wm. & Mary L. Rev. at 135-36 (discussing *Chauncey*'s implications on MERS).

[7] The present case, like many others involving subprime mortgages, has been complicated by the fact that "[i]n recent years, mortgage servicing and origination companies have gone in and out of business in cycles recalling the permanence of a strobe light."  Peterson, 53 Wm. & Mary L. Rev. at 126.  Homecomings's bankruptcy proceedings were administered as a part of *In Re: GMAC-RFC Holding Company LLC*, No. 12-bk-12029, Chapter 11 (S.D.N.Y. Bkcy).

[8] At oral argument, counsel for the Defendants admitted that if a valid assignment of the Note took place, there should be evidence of such an assignment, but that no such evidence was available in this case.  Counsel also averred that a line entry in a computerized MERS record suggests that Homecomings assigned the Note to Fannie Mae, but MERS, in its capacity as his client, refused to authorize submission of that entry to the Court as evidence.  The Court will not consider counsel's representations as a substitute for admissible evidence.

Note may be transformed into bearer paper, and mere physical possession will imbue the holder of the Note with mortgage-related rights. *Compare* N.Y. U.C.C. Law § 3-204(2) (McKinney) ("An instrument payable to order and indorsed in blank becomes payable to bearer and may be negotiated by delivery alone . . . ."); *and Coakley*, 838 N.Y.S.2d at 623 (finding the "MERS was the lawful holder of the promissory note" where "[t]he record shows that the promissory note was indorsed by First National over to the First National Bank of Nevada, then *indorsed* by First National Bank of Nevada *in blank*, and ultimately transferred and tendered to MERS") (emphasis added); *with* 80 N.Y. Jur. 2d Negotiable Instruments, § 264 ("delivery without indorsement" is insufficient). Here, the parties agree that Plaintiffs' Note lacks the indorsements that are necessary to imbue the holder of the Note with any rights in the Property.

Therefore the parties are at an impasse. For years now, Plaintiffs have not made payments on their Note and yet, perhaps due to the title problems explored above, no foreclosure action has ever been brought against the Property. Given the facts, it appears that Defendants (at least Nationstar, Fannie Mae, and MERS) lack standing to enforce the Mortgage. However, because Plaintiffs secured their Note with a mortgage, and because mortgage rights follow that Note by operation of law, therefore, even if the Note has descended into a bankruptcy-entangled morass of questionable provenance, the right to foreclose follows that Note, like Orpheus to Eurydice, even into the depths of clouded title.[9]

Plaintiffs have asked for a declaration that the mortgage is invalid and cannot be enforced by *any* entity. However, each party has set forth facts that would give some Defendant the right to enforce the Mortgage: under Defendants' version of the facts, Fannie Mae or Nationstar could foreclose; under Plaintiffs' version, Homecomings, or its successor entity, has that right.

---

[9] Perhaps it is also possible that if we turn to look too closely upon the Note, it too will vanish.

Questions of fact remain, to be sure, but they are not material to the relief sought on summary judgment; under either version of the facts, Plaintiffs' motion fails.

### IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for partial summary judgment is denied. The Clerk of the Court is directed to close the motion at docket number 40.

Counsel for the parties shall appear for a status conference on Friday, May 30, 2014, at 12:00 p.m. in Courtroom 706 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York, 10007.

SO ORDERED.

Dated: May 21, 2014
      New York, New York

_____
J. PAUL OETKEN
United States District Judge